**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

KEONDRA MONTREL CHESTANG,
ADC #134005                                                                                      PLAINTIFF

2:09-cv-00068-JLH-JTK

MARTHA WIGGINS, et al.                                                                  DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Chief Judge J. Leon Holmes.   Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations.   The copy will be furnished to the opposing party.   Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

1

3.     The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof,  and a copy,  or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## DISPOSITION

An evidentiary hearing was held in this case before the Court on April 18, 2011.  Following a presentation of the testimonies of the parties and witnesses, and submission of exhibits, the Court enters the following Proposed Findings and Recommended Disposition.

## I.     Introduction

Plaintiff KeOndra Chestang is a state inmate incarcerated at the Varner Unit of the Arkansas Department of Correction (ADC).  He filed this action pursuant to 42 U.S.C. § 1983, alleging an unconstitutional strip search by Defendant Wiggins while he was incarcerated in the administrative segregation (ad seg) area of the East Arkansas Regional Unit (EARU) on June 16, 2008.  Defendants Steve Outlaw, Greg Harmon, Ray Hobbs, and Larry Norris were dismissed by Order dated October 16, 2009 (Doc. No. 26).   Plaintiff asks for monetary relief from Defendant Wiggins.

**II.     Factual Findings**

    **A.     Hearing Testimony and Exhibits**

        **1.     Plaintiff KeOndra Chestang**

Plaintiff alleges Defendant Wiggins approached his cell on June 16, 2008 to ask him if he wanted to go outside for yard call.   Plaintiff was incarcerated in an ad seg cell, which contained a solid steel door with two windows and a trap.   When Plaintiff responded in the affirmative, Defendant told him to strip, hand his clothes to her through the trap, squat and cough, and lift up his genitals to reveal any possible contraband.   Plaintiff testified that he told Wiggins that an opposite-sex visual strip search violated ADC policy, which required same-sex strip searches.   Wiggins refused to call someone else to be present and Plaintiff stated he was not going to refuse her direct order to strip, in fear of receiving a disciplinary charge.   He stated the incident lasted "maybe a little more than a minute."

After Wiggins conducted the strip search by watching Plaintiff through the windows of his cell, she returned his clothes to him.   Plaintiff testified that Sgt. Wiggins made some unclear remark about his being "kin to horses."   He then re-dressed and was escorted out of his cell for yard call.   Plaintiff filed an Informal Resolution on June 20, 2008, complaining about the search.   Plaintiff's Ex. 3.   According to this "grievance",

> On the date of 6/16/08, I alledge that I was unproperly searched therefore causing humiliation & embarassment (On the above date) Before exiting my cell for yard call, I was directed by Sgt. Wiggins to drop my boxers, squat & cough.   This complaint isn't brought against this particular officer due to, I understand she was directed & trained through higher administration to conduct searches in the above mentioned order thereby as including this complaint is brought against: chief of security Major M. Williams, Deputy Warden S. Outlaw and Warden G. Harmon. This is an ongoing issue, more than one officer is conducting searches of this nature...

An ADC employee responded to the Informal Resolution, stating that post orders required inmates to be searched before exiting their cells.  Id.  Plaintiff then filed a formal grievance, which Warden Harmon responded to on July 23, 2008, as follows:

> Your complaint alleges you were humiliated because staff instructed you to drop your boxers, squat, and cough before exiting your cell for yard call.  Your complaint is duly noted.  However, according to Policy 9.08.0 frequent unannounced searches of inmates will be conducted as often as necessary to ensure the safety and security of the Unit.  Any inmate refusing to be searched will be subject to disciplinary action and may be forcibly searched.  Unit post orders states that inmates must be strip-searched before entering or exiting the cellblock.  Therefore, this complaint has no merit.

Id. at p. 2.  Plaintiff appealed this ruling to Assistant Deputy Director Ray Hobbs, who held on December 15, 2008, that the strip search was conducted by Defendant Wiggins in violation of Administrative Directive (AD) 08-14, which requires that such searches be conducted by same-sex employees.  "I therefore, find merit to this Grievance Appeal and I will advise Warden Harmon via this Grievance Appeal decision to follow up with Sgt. Wiggins on the important of following AD 08-14."  Id. at p. 3.

Plaintiff admitted that the reason he was incarcerated in the ad seg unit at the time was because he had assaulted an officer in October, 2007, while in general population, and also admitted he could be violent.  He stated the improper search caused him embarrassment and humiliation, and that the chief of security and Warden Harmon permitted such practices to occur on a regular basis. He also stated he was transferred to the Varner Unit in September, 2008, prior to receiving the final ruling from Assistant Director Hobbs.  He asked the Court to award him $30,000 in damages, which includes compensatory and punitive damages and costs associated with filing the lawsuit and conducting research.

### 2. Greg Harmon

Harmon was warden of the EARU in June, 2008. He is now the warden of the Wrightsville Unit. He stated he is familiar with the ADC policy which prohibits female officers from strip-searching male inmates, but that he interpreted Plaintiff's grievance to be a complaint about strip-searches in general, and not opposite-sex searches in particular. He explained that this interpretation was due to the wording of the grievance, where Plaintiff stated it wasn't filed against Wiggins in particular, but also against the chief of security, Warden Harmon, and Assistant Warden Outlaw.

ADC AD 08-14 governs the searches of inmates, unit searches, and control of contraband. Specifically, the policy concerning strip searches provides as follows:

> Strip searches shall be conducted in a professional manner by staff of the same gender as the inmate except in cases of emergency (i.e., escape, riot, etc.). Strip searches of inmates do not require reasonable suspicion that the individual is concealing contraband.

Defendants' Ex. 3, AD 08-14 IV.B.4.b. Harmon stated he enforced this policy in 2008 and continues to enforce it now, and that an officer who violates the policy will be disciplined. He agreed that Assistant Director Hobbs determined that Wiggins violated the policy, and while he cannot recall the specific situation, his typical practice in such situations would be to follow the instructions set forth by the Assistant Director in the grievance response. When asked how Wiggins should have handled the situation, he stated that any time an inmate leaves the cell, he must be escorted by two officers, and that he would expect the female officer in that situation to step away from the door of the cell where she would not have a direct view of the inmate being searched.

### 3. Defendant Martha Wiggins

Wiggins has worked for the ADC since 1998. She does not specifically recall interacting with the Plaintiff on June 16, 2008, and stated it is not her policy to conduct visual strip searches.

She also stated that Plaintiff was not required to attend yard call on that date, and could have refused her order to strip.  (This is not consistent with Warden Harmon's response to Plaintiff's grievance, that Plaintiff could not refuse her order.  Plaintiff's Ex. 3.)   In December, 2008, she received a request to respond to Plaintiff's grievance on an ADC Inmate Grievance Investigation Worksheet. Plaintiff's complaint was listed on the worksheet as follows:  "I/M (inmate) alleges he was improperly stripped (searched) by you.  Please address."  Plaintiff's Ex. 4.  Wiggins responded by stating, "Written policy dictates that every inmate is to be searched before exiting the cellblock per page 2 of 6 section C-4.  End of statement."  Id.  She testified that she understood the focus of Plaintiff's complaint as concerning strip searches, and therefore responded to it by quoting the policy.  She also stated she was aware of Plaintiff's assault history and would not have escorted Plaintiff by herself.

### 4.      Inmate Jeremy Bryant

Inmate Bryant testified that he was housed in the cell next to Plaintiff on June 16, 2008, and could see and hear Defendant Wiggins from his cell window.  He testified he saw only Defendant Wiggins at Plaintiff's cell door on that date and he was pretty sure that she directed Plaintiff to strip prior to going to yard call.  Bryant stated that Wiggins had conducted visual strip searches of him in the past, but that he did not file a grievance about it.  Although Bryant testified that he also went to yard call on June 16, 2008, Defendants presented an ADC record to show he refused yard call on that date.  Defendants' Ex. 9.

### 5.      Inmate Otis Arnold

Inmate Arnold testified he was housed a few cells away from Plaintiff and passed by Plaintiff's cell on June 16, 2008.  He stated Defendant and other female guards have conducted

visual strip searches of him in the past and also admitted he did not file a grievance about it.

Defendants presented an ADC record of movement showing that Arnold was not incarcerated in the

ad seg area of the Unit on June 16, 2008.  Defendants' Ex. 6.[1]

## III.    Legal Conclusions

### A.    Liability

Defendant argues that Plaintiff's unhappiness with strip searches in general motivated the

filing of this lawsuit, and that he never really intended to complain that the search was illegally

conducted by a female guard.  In support of this, Defendant relies on Plaintiff's grievance, in which

he stated that "this complaint isn't brought against this particular officer due to, I understand she was

directed & trained through higher administration..."  Plaintiff's Ex. 3.  In addition, Defendant states

she never would have visually strip-searched a male inmate because she knew that was a violation

of policy.

Plaintiff challenges Defendant's response, asking why she never previously denied

conducting the search.  He refers to her response on the grievance worksheet, in which she merely

stated that policy required strip searches.  He also refers to Assistant Director Hobbs' conclusion

that the search violated AD 08-14.  Plaintiff's Ex. 3, p. 3.

Whether a search is reasonable requires a case-by-case "balancing of the need for the

particular search against the invasion of personal rights that the search entails."  Bell v. Wolfish, 441

---

[1]

Plaintiff objected to the introduction of this exhibit as not "best evidence" of Arnold's movements. Plaintiff claimed the computerized print-out offered by Defendants was compiled based on handwritten "cut slips" and could be subject to human error.  Defendants agreed to research the availability of cut slips for June 16, 2008.  Following the hearing, Defendants submitted an affidavit of Jena Caldwell, a keeper of records at the EARU, who stated that the only records for June 16, 2008 are computerized, and that based on those records inmate Arnold was in isolation and not in the ad seg barracks on June 16, 2008.  See Doc. No. 116.

U.S. 520, 559 (1979).  Courts should consider 1) "the scope of the particular intrusion," 2) "the manner in which it is conducted," 3) "the justification for initiating it," and 4) "the place in which it is conducted."  Id.

Initially, the Court finds, from the evidence and testimony presented, that Defendant Wiggins did conduct a visual strip search of Plaintiff on June 18, 2011, in violation of ADC policy.  Although violation of a policy is not itself a constitutional violation (see Williams v. Nix, 1 F.3d 712, 717 (8th Cir. 1993)), the Court must also consider Wiggins' actions in light of the law set forth in Bell to determine if the actions independently violated Plaintiff's Fourth Amendment rights.

Contrary to the arguments of the Defendant, the Court finds that the Plaintiff's grievance does state a claim against Sgt Wiggins, a female, for violating "same sex" searches.  It clearly states that "I was unproperly searched therefore causing humiliation & embarassment (On the above date) Before exiting my cell for yard call, I was directed by Sgt. Wiggins to drop my boxers, squat & cough."  The Defendant's argument focuses on the partial statement in the grievance that "This complaint isn't brought against this particular officer...."  The grievances, however, goes on to state that because she was directed and trained through higher administration that the grievance is "thereby  as including this complaint is brought against: chief of security Major M. Williams, Deputy Warden S. Outlaw and Warden G. Harmon."  The Court finds that the Plaintiff intended his grievance to be directed not only (not exclusively) against Sgt. Wiggins, but also to include Major Williams, Deputy Warden Outlaw and Warden Harmon.  (As mentioned earlier, these other named Defendants were dismissed previously from this lawsuit.)

In Richmond v. City of Brooklyn Center, 490 F.3d 1002, 1008 (8th Cir. 2007), the court stated that the law in 2001 was clear that strip searches should be conducted by officials of the same

sex as the individual to be searched, citing Roberts v. Rhode Island, 239 F.3d 107, 113 (1st Cir. 2001).  In Williams v. Bradley, No. 5:05cv00010BD, 2008 WL 2954247 (E.D.Ark. 2008), the court held constitutional the presence of female guards in the vicinity of strip searches conducted by male guards.  The court further clarified, "None of this discussion, however, minimizes the settled rule that searches, and particularly strip searches and body-cavity searches, must be conducted in the least offensive manner possible.  Barring exigent circumstances, strip searches should be conducted by officers of the same sex as the individual searched."  Id. at p. 10, citing Richmond, 490 F.3d at 1008.

In this particular case, the Court will first look at the factors set forth in Bell v. Wolfish. While the justification, manner and place in which the search was conducted is acceptable, considering an inmate's limited right of privacy, the Court finds objectionable the scope of the intrusion in this case.   A similar finding was made in Canedy v. Boardman, 16 F.3d 183, 187 (7th Cir. 1994), the where the court held that cross-gender strip searches of inmates by guards of the opposite sex violated an inmates' privacy rights.  The court stated, "one of the clearest forms of degradation in Western Society is to strip a person of his clothes.  The right to be free from strip searches and degrading body inspections is thus basic to the concept of privacy."  Id at 185, quoting 3 George B. Trubow, ed., PRIVACY LAW AND PRACTICE, § 25.02[1].   In addition, in a dissenting opinion in Richmond, 490 F.3d at 1010, Judge Smith commented that "[a] strip search conducted with the utmost courtesy is nonetheless inherently humiliating and degrading."

Defendant Wiggins does not attempt to explain the circumstances surrounding the alleged incident, and she does not claim the existence of an emergency or other exigent circumstances. Rather, she states merely that ADC policy required the strip search and that she never would have

violated the portion prohibiting opposite-sex searches.  She does not, however, explain away the fact that the assistant director for the ADC found in Plaintiff's favor on his grievance, and found that her actions violated the policy.  Therefore, the Court finds sufficient evidence to support Plaintiff's claim that Defendant violated his Fourth Amendment rights by conducting the search.

### B.   Damages

The Prison Litigation Reform Act (PLRA), provides:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.

42 U.S.C. § 1997e(e).  The majority of courts hold that this limitation on damages applies to all federal prisoner lawsuits, and not just lawsuits alleging Eighth Amendment violations.  See, e.g., Thompson v. Carter, 284 F.3d 411, 416 (2d Cir. 2002); Searles v. Van Bebber, 251 F.3d 869, 876 (10th Cir. 2001); Allah v. Al-Hafeez, 226 F.3d 247, 250-1 (3d Cir. 2000), Todd v. Graves, 217 F.Supp.2d 958, 961 (S.D.Iowa 2002).   In Royal v. Kautzky, 375 F.3d 720 (8th Cir. 2004), the court held although § 1997e limits recovery for mental or emotional injury in all federal actions filed by prisoners, nominal and punitive damages, and injunctive and declaratory relief are not barred.

Plaintiff asks for compensatory and punitive damages in this action.  Plaintiff claims he suffered humiliation and embarrassment, but does not claim any physical injury. He also testified that the incident lasted "maybe a little more than a minute."

"Nominal damages, and not damages based on some undefinable 'value' of infringed rights, are the appropriate means of 'vindications' rights whose deprivation has not caused actual, provable injury.  Royal, 375 F.3d at 724, quoting Memphis Cmty. Sch. Dist. v. Stachura, 477 U.S. 299, 308, n. 11 ( 1986).  Therefore, the Court finds Plaintiff should receive a nominal damages award in the

amount of $1.00.  See Risdal v. Halford, 209 F.3d 1071, 1073 (2000), where the court awarded nominal damages of $1.00 for violation of Plaintiff's First Amendment right.

The Court does not find that Plaintiff is entitled to an award for punitive damages.  In order to support such an award, one must show that the defendants' conduct was "motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  Smith v. Wade, 461 U.S. 30, 56 (1983).  Plaintiff did not present any evidence to support this type of conduct by Defendant Wiggins, and his initial complaint/grievance minimized his blame on her directly.   Therefore, the Court will not grant his request for punitive damages.

**III**.   **Conclusion**

IT IS, THEREFORE, RECOMMENDED that Plaintiff be awarded Judgment over Defendant on his claim against her, and that he be awarded $1.00 in nominal damages.

IT IS SO RECOMMENDED this 25th day of April, 2011.

_____
    JEROME T. KEARNEY
    UNITED STATES MAGISTRATE JUDGE

11